IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RONALD TROY AGEE, )
)
Petitioner, )
)
) NO. 3:03-0884
) JUDGE HAYNES
ROBERT WALLER, Warden, )
)
Respondent. )

**MEMORANDUM**

Petitioner, Ronald Troy Agee, filed his pro se petition under 28 U.S.C. § 2254 seeking the writ of habeas corpus to set aside his state convictions for conspiracy to distribute over 300 pounds of marijuana and possession with intent to deliver over 70 pounds of marijuana. Petitioner's principal claims are that his trial counsel rendered ineffective assistance of counsel by (1) failing to advise him that his conviction of a Class A felony would violate the ex post facto provisions of the state and federal constitutions; (2) giving him erroneous advice regarding his classification as a career offender; and (3) giving him erroneous advice on the State's ability to file a superseding indictment alleging multiple conspiracies. Petitioner asserts that because of his counsel's erroneous advice, his guilty pleas were not knowingly, voluntarily, and intelligently entered. Petitioner also asserts a claim that the prosecutor engaged in improper tactics and threats amounting to impermissible coercion in the plea bargaining.

The Respondent filed a motion to dismiss and motion for judgment as a matter of law, but the Court denied those motions, but without prejudice to renew after the Court appointed counsel for the petitioner. The Respondent renewed his earlier motion to dismiss and motion for judgment as a matter of law, but the Court granted petitioner's motion to strike those motions

because those motions presented matters outside the record and Petitioner asserted his need to expand the record. The Court allowed Respondent to re-file a motion for summary judgment after the record was expanded. Petitioner has now expanded the record to include additional documents.

Before the Court is the Respondent's third motion to dismiss and motion for judgment as a matter of law (Docket Entry No. 27), that again presents matters outside the record. See Docket Entry Nos. 8 and 27. This motion is considered a motion for summary judgment. See Fed. R. Civ. P. 12(b).

In his motion, Respondent argues that Petitioner's trial counsel's erroneous advice on sentencing and invalid amendment of the indictment are procedurally defaulted and that for his other claims, Petitioner has not shown the Tennessee Court of Criminal Appeals' decision to be contrary to federal law.

In his response, Petitioner argues that his claims are not procedurally defaulted because the Respondent has not cited any firmly established and regularly applied state rule to bar these claims nor did the Tennessee courts do so. Petitioner asserts that these claims were in his pro se post conviction petition, but the Tennessee courts ignored these claims. Petitioner also contends that the Tennessee court's decision was an unreasonable application of federal law to the facts in the record and that the Respondent relies upon disputed facts that require an evidentiary hearing to resolve.

### A. State Court Record

On August 16, 2000, the petitioner pled guilty to conspiracy to distribute over 300 pounds of marijuana and possession with intent to deliver over 70 pounds of marijuana.

(Docket Entry No. 8, Attachment thereto, Addendum 1; Addendum 2 at 2-3, 33). Under the plea agreement, Petitioner's sentence was thirty-five-years as multiple offender. Id. In addition, the State agreed: (1) to release the lien of judicial forfeiture on his residence; (2) to forego seeking forfeiture of his vehicles used by his wife; and (3) to forego prosecuting the petitioner for an arson offense. Id at Addendum 2 at 3-4.

On October 27, 2000, Petitioner filed his pro se petition for post-conviction relief with numerous claims (Addendum 3). The state trial court appointed counsel who filed an amended petition with the only claims that the petitioner received ineffective assistance of counsel because counsel improperly permitted the petitioner to plead guilty to a "clearly erroneous" felony class and range of punishment. Id. at Addendum No. 4. Petitioner cited a 1998 Tennessee law that elevated the offense of conspiracy to deliver 300 pounds or more of marijuana from a Class B felony to a Class A felony. Id. Because the indictment charged a conspiracy beginning in August of 1997 and ending in January of 1999, the Petitioner contends that the law in effect at the time the conspiracy began controls. Id. The amended section also included a claim of prosecutorial misconduct that was also based upon the state renewal of a Class A felony. Id. at p. 2.

After an evidentiary hearing, the trial court denied his petition concluding: (1) that the petitioner received effective assistance of counsel; (2) that the petitioner's guilty pleas were knowingly, voluntarily, and intelligently entered; and (3) that the petitioner's conviction for conspiracy was properly classified as a Class A felony. (Addendum 6).

Petitioner appealed his claim that his trial counsel was ineffective for permitting him to plead guilty to a Class A felony when his offense was a Class B felony. Id. at Addendum 7 at p.

3

8. The Tennessee Court of Criminal Appeals concluded that trial counsel did not error as to the sentencing range for a Class A felony, because conspiracy to which Petitioner pled was a continuing offense and the classification of the offense as a Class A felony did not violate the ex post facto provisions of the United States and Tennessee Constitutions. That court also concluded that the petitioner received ineffective assistance of counsel and his guilty pleas were knowingly and voluntarily entered. See Agee v. State, 111 S.W.3d 571, 575-79 (Tenn. Crim. App. 2003). Petitioner applied to the Tennessee Supreme Court to hear his claims that the ineffectiveness of his trial counsel on the Class B felony issue, but the Court denied his application. Docket Entry No. 8 at Addendum No. 10.

## FACTUAL BACKGROUND

At the petitioner's plea hearing, the State set forth the factual bases for Petitioner's guilty plea as well as for his codefendants :

> Your Honor, in this case, State of Tennessee vs. Ronald Troy Agee, Mary Alice Bogle, Michael Peach, Sheryl Peach, and Jamie Stroud, the remaining defendants here today, No. 99-B-997, if the State's witnesses were called to testify, they would testify that in November of 1997, Officer — Lieutenant McCleskey of the Riverbend Prison for the Department of Correction turned over a tape recording, which was received by Sergeant McWright. And this tape recording consisted of an intercepted telephone conversation from the incarcerated Randy Beasley to Mr. Beasley's daughter and also, eventually, to Mr. Ronald Troy Agee, the defendant. That tape recording discussed the distribution of marihuana, as supplied by Mr. Troy Agee and distributed by Mr. Randy Beasley. Based on that, the police continued an investigation of the defendant, Troy Agee. It culminated in November of 1998 with the seizure of various trash deposits from Mr. Beasley's residence and, also, two controlled purchases of marihuana from the co-defendant, Roger Thompson. The police observed that he obtained his one pound of marihuana on both the sales on December the 1st and December the 3rd of 1998 from co-defendant, Randy Beasley's residence.
>
> On December the 4th, the police arranged for a larger purchase or attempted to arrange for a larger purchase of more marihuana and set up

4

surveillance in the area of Hutton Avenue and Rosemary Drive, in South Nashville, in Davidson County. The police had numerous individuals doing the surveillance. They observed the co-defendant, Randy Beasley, that morning pick up the co-defendant, Mark Gore, returned [sic] to the Hutton Avenue address, which is the residence of the defendant, Ronald Troy Agee. The police observed the three of those gentlemen standing outside in the yard, appeared to be watching police surveillance vehicles.

Later, during the morning, Sergeant McWright observed this defendant, Jamie Stroud, remove two large black trash bags from Mary Alice Bogle's residence, on Rosemary Drive. It was placed in a truck. The bags were transported to 516 Waycross, which was the residence of Michael and Sheryl Peach, these defendants.

Police then observed Sheryl Peach take a black trash bag and place it in a Mustang automobile, which was registered to co-defendant, Rita Agee, at the residence of 2005 Hutton, Mr. Ronald Troy Agee's residence. And as she left, she was stopped after committing a traffic violation. The drug dog alerted on her car and seized from there was approximately ten pounds of marihuana. A subsequent search of her residence and Michael Peach's residence revealed numerous trash bags of residue, drug records showing large amounts of distribution of drugs during the month of May of 1998, and also, an additional three pounds of marihuana, which make a total pound weight of marihuana, possessed by the Peach's, over ten pounds, Ms. Peach.

The police also observed from the Waycross residence, 516 Waycross residence, Mr. Jamie Stroud and Mr. Michael Peach leave that residence. An article was placed in the back of the truck. The truck was registered to Ms. Sheryl Peach. As they departed, Officer Mike Garbo stopped the truck. And based on probable cause, Mr. Michael Peach and Mr. Jamie Stroud fled from the scene. Jamie Stroud was arrested by Mike Garbo near the scene of the traffic stop. Michael Peach was found on Nolensville Road later by Officer Stevie Benton. Inside the truck was approximately 48 pounds of marijuana, drug records for December 1st of that week and the day before.

An analysis of those drug records, Your Honor, revealed over 450 pounds of marihuana had been distributed just the week prior to this arrest by this organization, over 450 pounds.

The police, then observed the activities back at Rosemary and Hutton. They observed that Mr. Ronald Troy Agee had fled the scene after they'd observed him drive slowly around the block earlier in that morning, which appear to be as Your Honor's heard discussions, countersurveillance. But that was the police officer's opinion that it was countersurveillance.

At any rate, Mr. Agee fled the scene when Officer — Sergeant McWright returned back to Rosemary Drive. At this time, Sergeant McWright observed co-defendant, Randy Beasley, leaving Rosemary Drive in an Oldsmobile vehicle registered to Ms. Alice Bogle and previously seen at the Rosemary Drive address. He was pursued. He fled the pursuit. That vehicle was eventually stopped. And Mr. Beasley was arrested, after he fled from that scene. Over a hundred and fifty pounds of marihuana was found in the trunk in that vehicle.

Police, then obtained a search warrant, as I mentioned for Waycross. They also obtained a search warrant for 2011 Rosemary, which is the residence of the defendant, Mary Alice Bogle. Inside that residence they found clothing and articles belonging to the defendant, Troy Agee, as well as prescription medication for him.

They found inside the residence, Your Honor, a safe that was opened and empty and had a large number of rubber bands commonly used to wrap drug money in various denominations. That safe was empty — opened and empty. Next to that was that on top of which contained a listing of drug debts owed by approximately twelve individuals, drug debts as much as $50,000. There appeared to be over $70,000 that had recently been paid as reflected on the notes and approximately $100,000 that was still left owing.

The police also found and the drug dog alerted on a compartment that was fashioned under an addition to the house. That compartment was — you could obtain entrance through a closet — a trap door in the closet. Marihuana odor appeared to be from that compartment as soon as it was opened. As Sergeant McWright testified, the marihuana odor was so strong you could hardly breathe. This was the space — the crawl space that had been mentioned in previous hearings, Your Honor. Also, there was a footlocker found by Officer Dean Hunter that the dog alerted on him that had marihuana residue inside. A large number of weapons were also seized from the residence.

The police executed a search warrant of the defendant, Troy Agee's residence, at 2005 Hutton. They found, Your Honor, a receipt from a business in Huntsville, Alabama, Alabama Spy Shop. From that Spy Shop, that receipt reflected numerous books purchased on how to hide things in your house, how to detect whether or not your telephone is being tapped by police, how to build silencers and the like. There were also other articles, anti-law enforcement detection articles purchased.

An interview of Ms. Debbie Peltier at that residence — at that business, she identified the defendant, Troy Agee, as having purchased those items the day

6

> before the police conducted the searches. Mr. Agee spoke to her and told her that he was working for an individual who was involved in the large scale distribution of marihuana. And he was purchasing these items to protect himself. She idicated she distinctly remembered the purchase because it was paid for in a wad — in a large roll cash that was pealed off and paid.

(Docket Entry No. 8, Addendum 2 at 27-32). In the state post-conviction proceeding, the Tennessee Court of Criminal Appeals found that "the conspiracy for which Petitioner pled guilty continued beyond the effective date of the statute designating the offense as a Class A felony." 111 S.W.3d at 578.

The Petitioner then agreed to plead guilty to conspiracy to distribute over 300 pounds of marijuana, as a Class A felony, and possession with intent to deliver over 70 pounds of marijuana is a Class B felony. (Addendum 1; Addendum 2 at 33).

At his post-conviction hearing, the proof focused on Agee's counsel and the indictment that was filed in 1997. (Addendum 5). The relevant statute Tenn. Code Ann. § 39-17-417(i)(13), (j)(13) (1997) had been amended effective July 1, 1998, to make conspiracy to deliver over 300 pounds of marijuana a Class A felony. See Tenn. Code Ann. § 39-17-417(j)(13)(A).

Based upon the testimony at the post-conviction hearing, the Tennessee Court of Criminal Appeals made the following factual findings:[1]

> At the post-conviction hearing, Petitioner testified that on the eve of trial, after a jury was impaneled, he received an offer for a negotiated plea agreement from the State. Petitioner accepted the plea offer and received a thirty-five year sentence. The range of punishment for count one, as set out by his attorney in the plea agreement, was for a Class A felony. Petitioner testified that he discovered only after he entered his pleas that count one had previously been a Class B

---

[1] In Sumner v. Mata, 449 U.S. 539, 546-47 (1981), the Supreme Court stated that state appellate court opinions are treated as factual findings under the former 28 U.S.C. § 2254(b).

7

felony. Petitioner further testified that his attorneys never discussed with him the issue of whether count one was a Class A felony or a Class B felony or the effect that the Class of felony would have on his potential sentence.

Petitioner's trial counsel was William D. Massey, who also testified at the post-conviction hearing. Mr. Massey testified that he has been licensed to practice law in Tennessee for twenty years, and that for the past ten years, he has practice exclusively criminal law. His practice is located in Memphis, and in handling Petitioner's case, he had the assistance of Lorna McClusky, a partner at his office, and John Herbison, a practicing attorney in Nashville. Mr. Massey testified that he had sufficient time to prepare for trial, and he had sufficient communications with Petitioner. Mr. Massey testified that the lawyers discussed in depth with each other whether count one of the indictment was a Class A or Class B felony, and the discussed the issue "at length" with Petitioner. Mr. Massey explained to Petitioner that there was an issue as to what class of felony count one was and that the only way to resolve the issue would be to have a sentencing hearing, which in his case, required a trial and conviction. Mr. Massey also explained that the significance of the class of felony was the impact it would have on Petitioner's sentence.

Mr. Massey also discussed the issue with the prosecutor, John Zimmerman. Mr. Zimmerman believed that because conspiracy is an ongoing crime and Petitioner continued the conspiracy beyond the time when the legislature lowered the threshold weight of marijuana necessary to constitute a Class A felony. Mr. Massey testified that regardless of the class of felony, however, Petitioner's choices at the time of the offer included: (1) accepting the State's offer of thirty-five years, or (2) proceeding to trial.

Mr. Massey testified that the case involved multiple defendants, some of whom are members of Petitioner's family. The State's offer demanded that all of the defendants plead guilty in order for any of them to accept it. Mr. Massey testified that the prosecutor "could have offered [Petitioner] sixty years, and before he'd put his family to this trial, [he] would have fallen on his own sword. He would have pled to sacrifice himself for his family." Mr. Massey further testified that one of Petitioner's co-defendants, Michelle Beasley, had already entered a plea and was going to testify against Petitioner, which impacted Petitioner's odds of success and increased his family's exposure to criminal penalties. Mr. Massey also testified that another factor in deciding whether to accept the State's plea offer was Petitioner's significant criminal history and potential status as a Range III persistent offender. Even if, after a jury conviction, the trial court determined that count one of the indictment was a Class B felony offense, rather than a Class A felony offense, Petitioner faced a more severe punishment as a persistent or career offender than if he accepted the State's plea offer. Had Petitioner been convicted by a jury and sentenced as a Range III

8

offender to thirty years at forty-five percent, the maximum sentence in the range for a Class B felony, he would not be eligible for parole for eighteen years. Petitioner was offered thirty-five years at thirty-five percent, as a Range II offender, making him eligible for parole in twelve years and three months.

Lorna McClusky, Mr. Massey's law partner, also testified at the post-conviction hearing. She testified that she and the other two lawyers discussed the issue of whether count one was a Class A or Class B felony early in the preparation of Petitioner's case, and they discussed the issue with Petitioner before he entered his guilty plea. Ms. McClusky testified that Petitioner's strongest motivation for accepting the State's plea offer was the impact that going to trial might have had on offers to his family members to enter negotiated plea agreements.

Attorney John Herbison, who also represented Petitioner, testified that he communicated with Petitioner early in this case and frequently. Mr. Herbison disagreed with the prosecutor and Mr. Massey. Mr. Herbison believed that because overt acts in furtherance of the conspiracy were committed prior to the change in the law, the ex post facto clauses of the state and federal constitutions would require the offense to be treated as a Class B felony. He testified that he discussed the point with both co- counsel as well as Petitioner. At some point, even Petitioner's wife and father were present for the discussions. Mr. Herbison decided, as a tactical matter, not to alert the State to the issue prior to when jeopardy attached because he was concerned that another indictment might be brought alleging a conspiracy beginning after the effective date of the change in the law. Before Petitioner entered his guilty pleas and after the State made its offer, Mr. Herbison indicated to Petitioner that he had concerns about whether thirty-five years was, in fact, a legal sentence. Mr. Herbison also compared release eligibility under the offer and under the circumstances of a jury conviction. Mr. Herbison believed that if convicted, Petitioner's criminal history would qualify him as a career offender. If convicted of a Class B felony and sentenced as a career offender, Petitioner could have expected to receive a sentence of thirty years to be served at sixty percent.

(Addendum 8) Agee, 111 S.W.3d at 573-75.

As the merits of Agee's <u>ex post facto</u> contention, the Tennessee Court of Criminal Appeals ruled as follows:

### Ex Post Facto Analysis

We agree with the post-conviction court and conclude that it was not error for trial counsel to set out the sentencing range for a Class A felony in Petitioner's

9

guilty plea petition. While the issue appears to be one of first impression in Tennessee, other jurisdictions, state and federal, have held that a conviction for conspiracy to violate a criminal law does not violate the constitutional prohibition against ex post facto laws where the conspiracy continued beyond the effective date of the amending law. United States v. Farmer, 73 F.3d 836, 841 (8th Cir. 1996) ("A conspiracy begun before the effective date of a relevant statute, but continued after that date, may constitutionally be punished under that statute. Conspiracy is a continuing offense."); United States v. Frazier, 936 F.2d 262, 267 (6th Cir. 1991) ("a person convicted of conspiracy may be sentenced under an amended statute that increases the sentence if the conspiracy continued after the effective date."); United States v. Henson, 848 F.2d 374, 1386 (6th Cir. 1988) (punishing a crime continued after the effective date of a statute imposing a greater penalty for conspiracy does not violate ex post facto); State v. Wilson, 315 S.C. 289, 433 SE.2d 864, 867 (1993) ("A conspiracy which commenced prior to and without cessation continued beyond the effective date of a new statute does not violate the ex post facto prohibition.").

Both the Tennessee Constitution and the Constitution of the United States prohibit ex post facto laws. U.S. Const. art. I, § 10, cl.1; Tenn. Const. art. I, § 11. Generally, ex post facto laws are those that make an act criminal that was not criminal at the time it was committed. Miller v. State, 584 S.W.2d 758, 761 (Tenn. 1979). Such laws are also prohibited by statute. Tenn. Code Ann. § 39-11-112 (1997) provides:

> Whenever any penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, any offense, as defined by the statute or act being repealed or amended, committed while such statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense.

The principle on which the ex post facto prohibition is based is that of fairness and the notion that persons have a right to fair warning of the conduct that will give rise to criminal penalties. Smith v. Campbell, 995 S.W.2d 116, 119 (Tenn. Ct. App. 1999) (citing Marks v. United States, 430 U.S. 188, 191, 97 S. Ct. 990, 992-93, 51 L. Ed. 2d 260, 265 (1977)). Because conspiracy to deliver over 300 pounds of marijuana was a criminal offense when the conspiracy began, see Tenn. Code Ann. § 39-17-417 (1997), these principles of fairness are not offended. Also included among the five broad classifications of ex post facto laws, however, are those that aggravate a crime or make it greater than when it was committed. Miller v. State, 584 S.W.2d at 761.

If application of the amended law would affect a substantial right of Petitioner, the ex post facto provisions of the state and federal constitutions are

10

implicated and the law in effect on the date the offense was committed should be applied. State v. Moss, 13 S.W.3d 374 (Tenn. Crim. App. 1999). In State v. Pearson, 858 S.W.2d 879, 883 (Tenn. 1993), the Tennessee Supreme Court reiterated its holding in Miller v. State, 584 S.W.2d 758 (Tenn. 1979), and stated:

> [I]n determining whether an ex post facto violation exists in the context of sentencing, the critical question under both the United States and Tennessee Constitutions is whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred.

Tenn. Code Ann. § 39-17-417(j)(13)(A) clearly "changes the punishment to the defendant's disadvantage." The dispositive issue in this case, however, is the date on which the offense occurred. Under Tennessee law, criminal conspiracy is defined as "a continuing course of conduct which terminates when the objectives of the conspiracy are completed." Tenn. Code Ann. § 39-12-103(e)(1) (1997). If evidence exists that Petitioner participated in the conspiracy after the effective date of the change in the law, the amended law may be applied to Petitioner's criminal conduct without violating the constitution. See United States v. Bermea, 30 F.3d 1539, 1577-78 (5th Cir. 1994).

This conclusion flows from our review of Tennessee appellate courts' application of the ex post facto provisions of the Tennessee and United States Constitutions to laws affecting discrete crimes, or those which are completed upon the commission of a single act. The constitution prohibits the application of a law that was not in effect at the time the offense was committed. With regard to crimes for which the occurrence of a single unlawful act constitutes their commission, the determination is clear as to whether the crime was completed prior to the law's existence. In such cases, the offense is committed at an exact point in time, and the application of a law that later came into existence will clearly violate the ex post facto clauses.

Unlike those crimes, an offense such as conspiracy is constituted by a continuing course of conduct and its commission may occur, as in the case at bar, prior to and after the change in the law. In such cases, the law in question took effect while the offense was still being committed although it was not yet effective at the beginning of the conspiracy. Here, the law designating the offense in count one as a Class A felony was in existence when the offense was committed, from July 1, 1998 until the end of the conspiracy in December 1999 [sic]. Therefore, its application does not violate the ex post facto prohibition. Petitioner is not entitled to relief on this issue.

Petitioner pled guilty to conspiracy to deliver over 300 pounds of

11

marijuana. "The entry of a valid guilty plea constitutes an admission of all facts alleged...." State v. Smith, 996 S.W.2d 845, 847 (Tenn. Crim. App. 1999). By entering his plea of guilt, Petitioner has affirmatively admitted that he committed acts in furtherance of the conspiracy after the effective date of the statute designating the crime as a Class A felony. If Petitioner's plea was voluntarily and knowingly entered, the plea itself provides sufficient basis upon which to conclude that he committed acts in furtherance of the conspiracy beyond the effective date of the statute.

111 S.W.3d at 576-77.

## B. CONCLUSIONS OF LAW

An application for writ of habeas corpus shall not be granted unless the applicant has exhausted the remedies available in the state courts. See 28 U.S.C. § 2254(b); Granberty v. Greer, 481 U.S. 129. 133-34 (1987). To exhaust state remedies, the petitioner must have presented the very issue on which he seeks relief from the federal courts to the courts of the state that he claims is wrongfully confining him. See Picard v. Connor, 404 U.S. 270, 275-76 (1971); Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). If a petitioner's claim has never been actually presented to the state courts, that claim may be procedurally barred from federal habeas review. See Coleman v. Thompson, 501 U.S. 722, 752-53 (1991).

Respondent argues that under Tennessee law, a petitioner may file only one petition for post-conviction relief attacking a single judgment. Citing Tenn. Code Ann. § 40-30-102(c). Respondent acknowledges that Petitioner attempted to raise the challenged ineffective assistance of counsel claims in his pro se filings before the Tennessee Court of Criminal Appeals (Petitioner's Addendum Nos. 2 and 3). Yet, Respondent cite precedents that a defendant in a criminal case may not proceed pro se while simultaneously being represented by counsel, and any pro se filings or assertions will not be reviewed by the Tennessee courts, citing State v. Davis, 141 S.W.3d 600, 615 n. 12 (Tenn. 2004); Wallace v. State, 121 S.W.3d 652, 655 n.2

Case 3:03-cv-00884   Document 35   Filed 08/03/05   Page 12 of 18 PageID #: 13

(Tenn. 2003); State v. Burkhart, 541 5 .W.2d 365, 371 (Tenn. 1976).

A procedural default must be based on an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim. Dietz v. Money, 391 F.3d 804, 810 (6th Cir. 2004); Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986). A state procedural rule must be firmly established and regularly adhered in order to constitute an adequate and independent state ground supporting a procedural bar. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). Further, a state procedural ground is independent "only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996). To invoke this doctrine requires a "'plain statement that a [state court] decision rests upon an adequate and independent state ground." Michigan v. Long, 463 U.S. 1032, 1042 (1983); Dietz, 391 F.3d at 808 ("Second, we ask whether the state court actually enforced the rule in sanctioning the petitioner's failure to comply").

Here, the Tennessee Court of Criminal Appeals' decision does not reflect its reliance on any state rule to bar consideration of Agee's pro se filings. Moreover, the issue of whether to consider pro se filings of a defendant who is also represented by counsel lies solely within the state court's discretion. Burkhart, 541 S.W.2d 371; State v. Franklin, 714 S.W.2d at 252, 261 (Tenn. 1986). In Burkhart, the Tennessee Supreme Court held that a defendant in a criminal case "does not have a constitutional right under the State or Federal Constitution to participate in propria persona in his own defense and simultaneously to be represented by participating counsel, but gave the trial judge the discretion to allow a defendant to do so "if the interests of justice so require." Id. at 371. See also Franklin, 714 S.W.2d at 264-65 (reaffirming as the trial

Case 3:03-cv-00884   Document 35   Filed 08/03/05   Page 13 of 18 PageID #: 14

court's decision to allow the defendant to make closing argument).

Given that lack of the state court's reliance on this rule and the discretionary nature of this rule, the Court concludes that the procedural default doctrine does not apply here.

The statutory grounds for issuance of the Great Writ are as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Frazier v. Huffinan, 343 F.3d 780, 787 (6th Cir. 2003), amended by 348 F.3d 174 (6th Cir. 2003). Similarly, under the "unreasonable application" clause, a federal court may grant habeas relief if the state identifies the correct governing principle but unreasonably applies that principle to the facts involved. Williams, 529 U.S. at 407-08. The proper inquiry is whether the state court's decision was "objectively unreasonable," rather than simply incorrect. Id. at 409-11. Although federal courts must presume that factual findings made by a state court are correct, the petitioner can show otherwise by "clear and convincing evidence." 28 U.S.C. § 2254 (e)(1);

14

Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both: (1) that his counsel's performance was constitutionally deficient; and (2) that he was prejudiced by his counsel's errors. Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance is measured by an objective standard of reasonableness under prevailing professional norms. Id. at 687-88. As to the first factor, Petitioner must show that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the Defendant by the Sixth Amendment." Id at 687. As to the second factor, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." Id.

The Strickland analysis extends to counsel's advice during the plea process. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). In this context, Plaintiff must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Magana v. Hofbauer, 263 F.3d 542, 548 (6th Cir. 2001) (granting habeas relief where counsel's "gross misadvice" induced defendant to reject government's plea offer). (citation omitted).

As to the validity of the plea, in Boykin v. Alabama, 395 U.S. 238 (1969), the United States Supreme Court ruled that defendants should be advised of certain of their constitutional rights before entering pleas of guilt. The core requirement of Boykin is "that no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary." Fontaine v. United States, 526 F.2d 514, 516 (6th Cir. 1975). The plea must represent a "voluntary and

15

intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25 (1970). A plea which is the product of "ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats" is not voluntary. Boykin, 395 U.S. at 242-43.

After setting forth the evidence presented by the state at the plea hearing, the state court ruled that Mr. Agee's guilty plea was knowing and voluntarily entered, and that he "affirmatively admitted that he committed acts in furtherance of the conspiracy after the effective date of the statute designating the crime as a Class A felony." Id. The Tennessee Court of Criminal Appeals agreed citing inter alia federal law that it was not error for Mr. Agee's counsel to advise him that the conspiracy count could be punished as a Class A felony is not an unreasonable application of federal law. Thus, give this factual finding, based upon Petitioner' admissions, the Tennessee Courts decisions are not contrary to federal law.

Petitioner's argues that his mere presence in an area when drugs are present alone, is sufficient to support his convictions, citing State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Yet, among the facts of the plea hearing is the Petitioner's statement that he was working for an individual who was involved in the large scale distribution of marijuana. (Docket Entry No. 8, Addendum No. 2 at p. 32). Agee purchased anti-law enforcement detection devices from this witness. The evidence that drugs were placed in vehicle at the Petitioner's residence. Id. at 28. After that was discovered, Agee fled the area where marijuana was found. Id. at 27-28. At another location where marijuana was found, Agee's clothing and medications were also found. Id. at 31. These facts show more than mere presence.

For these reasons, the Court concludes that the Tennessee courts rulings that Agee's

16

counsel was constitutionally effective were unreasonable determinations in light of the evidence presented.

As to the Petitioner's other claims, Petitioner requests an evidentiary hearing, on the claims in his pro se petition in the state court. To justify an evidentiary hearing based upon an inadequate state record, there must be proof of "a lack of fault or some greater fault attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2002).

Here, Petitioner's counsel in the state post-conviction made the decision not to include these claims in Petitioner's amended petition nor to offer proof on these claims at the subsequent state post-conviction evidentiary hearing. Petitioner testified at the post-conviction hearing, but did not mention anything about career offenders or prosecutorial misconduct. Id. at pp. 4-16.

In any event, the testimony at the post-conviction hearing was that a critical co-defendant decided to plead guilty and would testify against Petitioner and two family members, his mother and aunt who were also co-defendants. (Docket Entry No. 8, Addendum No. 1 at pp. 21-22). The state's plea offer was to all defendants, as a group and under the offer, his mother received probation and his aunt a split sentence that avoided a penitentiary sentence. Id. at 27. Given his "significant" criminal history, Petitioner's counsel considered him eligible as a Range III or career offender. Id. at 26. With the state's offer, Petitioner was eligible for parole in 12:25 years. Id. As a career offender, Petitioner had to serve 18 years to be eligible for parole. Id. Given his family concerns and the range of punishment, Petitioner decided to accept the state's offer. Id. at 22, 23.

Petitioner's counsel's opinion was that family considerations were Petitioner's motivation of acceptance of this plea offer. Id. at 40. "[B]efore he'd put his family to this trial,

17

Mr. Agee would have fallen on his own sword. He would have pled to sacrifice himself for his family." Id.

In sum, the state court testimony of his counsel is that Petitioner's decision on the plea was motivated by family concerns. In response to the motion for summary judgment, Petitioner has not offered any proof in these claims to warrant a hearing.

Upon this record, the Respondent's motion should be granted and the petition should be dismissed.

An appropriate Order is filed herewith.

**ENTERED** this the 2nd day of August, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge